## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANK HALE, III,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 14-00222-CG-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

### AMENDED REPORT AND RECOMMENDATION[1]

Social Security Claimant/Plaintiff Frank Hale, III ("Hale") has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his protective application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.[2] The parties have waived oral argument, and this action is ripe for adjudication. (*See* Docs. 16, 17). Under SD ALA LR 72.2(c)(3), this action has been referred to the undersigned Magistrate Judge for a recommendation as to the appropriate

---

[1] The undersigned's previous Report and Recommendation (Doc. 18) is **WITHDRAWN**. This Amended Report and Recommendation is being filed solely to add a notice of right to file objections, *see* Section VI, *infra*, and is otherwise identical to the previous Report and Recommendation.

[2] The record reflects that Hale resides in this judicial district. Thus, venue is proper in this Court. *See* 42 U.S.C. §§ 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [on a claim for supplemental security income] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.") and 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business…").

disposition in accordance with 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b).

Upon consideration of the parties' briefs (Docs. 12, 13) and the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s)])"), the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural Background

On February 10, 2011, Hale protectively filed applications for DIB and SSI with the Social Security Administration ("SSA"), alleging disability with onset date of June 15, 2010.[3] (R. 25).  After his applications were initially denied on April 21, 2011, Robinson requested a hearing on his applications.  (*Id.*).  A hearing was held before an Administrative Law Judge ("ALJ") for the SSA on June 28, 2012, in Mobile, Alabama.  (*Id.*).

On August 16, 2012, the ALJ issued an unfavorable decision on Hale's application, finding that he was not disabled within the meaning of the Social Security Act.  (R. 22-34).  Robinson requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review.  (R. 17).

---

[3]     "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)."     *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

"For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

On March 6, 2014, the Appeals Council issued its decision denying Hale's request for review. (R. 4-8). Hale subsequently filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council. When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.").

## II.    Standard of Review

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004)).[4]  This five-step evaluation process "is used to determine disability for both SSI and DIB claims."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1030–31 (11th Cir.1986); 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB)).

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).  "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history."  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)).  "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant

---

[4] The undersigned will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). *See also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) ("Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d

129, 131 (11th Cir. 1986).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips,* 357 F.3d at 1240 n.8 (alteration in original) (quoting *Bloodsworth*, 703 F.2d at 1239)).   Even if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Davison v. Astrue*, 370 F. App'x 995, 996 (11th Cir. 2010) (per curiam) (unpublished)[5] (citing *Crawford*, 363 F.3d at 1158-59).  "Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).

Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.   Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted).  *See also Moore,* 405 F.3d at 1211 ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)).

### III.   Claims on Appeal

**Claim 1** – "The Commissioner's decision should be reversed because the ALJ's entire RFC is based solely upon her own unqualified medical judgment and the opinion of a single non-medical source, a source forbidden to be used as evidence by the Commissioner's own operating procedures."

**Claim 2** - "The Commissioner's decision should be reversed because the ALJ failed to accord proper weight to the opinions of the claimant's treating physicians, the only medical source opinions in the record."

**Claim 3** - "The Commissioner's decision should be reversed because the ALJ failed to include the required 'function-by-function' assessment."

(Doc. 12 at 2-3).

### IV.   Analysis

All of Hale's claims challenge the ALJ's determinations at Step Four.  At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

## A.    Treating Physicians (Claim 2)

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians."  *Eyre v. Comm'r, Soc. Sec. Admin.*, 586

F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).

Hale claims that the ALJ erred in failing to assign substantial or considerable weight to the medical opinions of Dr. Mark Pita and Dr. Joseph Ndolo, Hale's treating physicians, which Hale correctly notes to be "the only medical source opinions in the record" (or at least the only ones considered by the ALJ). (Doc. 12 at 6). The ALJ summarized the medical records and opinions of Drs. Pita and Ndolo

as follows:

On March 16, 2011, the claimant presented to personnel at Premier Internal Medicine, P.C. with complaints of severe low back pain/SI joint pain radiating into his feet. He also reported numbness, curing and cramps in his legs. He described this as constant and dull. He stated that his medications were no longer helping with the pain. He claimed he had not slept in 2-3 days due to pain. He indicated that his low back pain was aggravated by standing. Musculoskeletal exam revealed muscle spasms with severe bilateral SI joint pain. He had multiple trigger points. For the most part, examinations were essentially within normal limits, with few objective findings. The impressions were severe low back pain, severe bilateral SI joint pain, bilateral sacroiliitis, SI joint dysfunction, trapezius muscle spasms, insomnia, morbid obesity and hypertension. Dr. Joseph N. M. Ndolo was of the opinion that the claimant's pain disability index was 9 on a scale of 1-10 with 10 being the worst in the categories of home responsibilities, recreation, social activity, occupation, and self-care and life-support activity. The claimant noted that he was out of pain medicine. He was given samples of Vimovo, refills of Ibuprofen 800 mg, Ultram and Lisinopril and prescriptions for Lorcet, Soma and Adipex P. (Exhibit 10F[6]).

On January 31, 2012, Dr. Mark A. Pita examined the claimant with a history of lumbar disc herniation. He stated that he was doing heavy lifting at work and developed significant low back pain. Emergency room personnel gave him pain medications. He was told not to lift greater than 10 pounds. The pain was throbbing and persistent but improving. He had a history of hypertension and diabetes mellitus. On exam, he stood 69 inches tall and weighted 371 pounds, which is described as morbidly obesity [sic]. There was pain with palpation of the lumber spine.

The assessment was obesity and backache. On February 23, 2012, he also had a diagnosis of obstructive sleep apnea was [sic] added to his other diagnoses. Radiological results of the lumbar spine indicate mild discogenic degenerative change at L3-L5. On March 6, 2012, his low back pain had not improved. On exam, he had decreased range of motion of the lumbar spine with throbbing and persistent pain with activity. On May 2, 2012, he continued with complaints of lower lumbar spine pain. He described intermittent burning pain that radiated into both legs and interfered with activity. His BMI was 55.4.

---

[6] Office treatment records from Premier Internal Medicine dated March 16-May 13, 2011. (R. 365-391).

He was taking a multitude of medications.  On exam, he weighed 375 pounds at a height of 69 inches.  There was pain with palpation of the lower lumbar spine.  The assessments were backache, obesity, isolated blood pressure was elevated and esophageal reflux (Exhibit 13F[7]). On March 6, 2012, Dr. Pita completed a physical capacities evaluation. He opined that the claimant could lift and/or carry 10 pounds occasionally and 5 pounds frequently.  During an 8-hour workday, he could sit for 3 hours and stand or walk for 2 hours.   He could frequently perform fine manipulation and he exposed to allergies, dust and other pulmonary irritants.   He could occasionally perform pushing/pulling movements with (arm and/or leg controls), grasp, twist, handle and occasionally operate motor vehicles and work with or around hazardous machinery.  He could rarely bend, stoop or reach (including overhead).   He could never climb stairs or ladders or balance.  Dr. Pita opined that the claimant would likely be absent from work 4 or more days per month due to his impairments or treatment. Dr. Pita also completed a Clinical Assessment of Pain form.  He opined that the claimant's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. Physical activity greatly increases the pain to such a degree as to cause distraction from tasks or total abandonment of task.  The side effects of his prescribed medications would cause some limitations but not to such a degree as to create serious problems in most instances (Exhibit 11 F[8]).

(R. 30-31).

The ALJ also considered medical records from the Coastal Neurological

Institute and the North Baldwin Infirmary:

On November 19, 2010, Coastal Neurological Institute personnel examined the claimant who had complaints of low back pain with radiation in the legs bilaterally.   He reported onset of symptoms in January 2010.  He complained of diffuse low back pain, right leg pain and left leg pain.   He related that the pain was provoked when standing but was relieved when sitting.   On exam, he weighed 350 pounds at 69.5 inches.  His tandem gait was normal.  There was no paraspinal muscle spasm.  His gait, posture and upper extremities and

---

[7] Office Treatment Records/History of Present Illness from Mobile County Health Department Family Primary Care, dated February 23-May 2, 2012.  (R. 396-427).

[8] Dr. Pita's Clinical Assessment of Pain and Physical Capacities Evaluation forms dated March 6, 2012. (R. 392-393).

lower extremities strength were normal.   There was no evidence of sensory loss.   Deep tendon reflexes were decreased in the upper extremities and lower extremities but equal.   The impression was degenerative disc disease of the lumbar spine.   He was given Lortab and Lisinopril.     On December 8, 2010, he reported leg pain, myofascitis/myositis, lumbar stenosis and degenerative disc disease of the lumbar spine.   He reported that his pain was provoked when walking, standing, pushing/pulling and going from sitting to standing. He related that the pain was relieved when sitting or lying supine.   He had a history of low back pain.   Surgery was recommended but only after he loses 100 pounds.   His gait and posture were normal.   There was no paraspinal muscle spasm.   Strength testing was normal throughout.   Reflex exam was normal in all areas.   Range of motion was functional throughout the extremities.   Neurological exam was within normal limits.   Range of motion of the neck was only slightly decreased except lateral flexion was 15 degrees bilaterally.   Thoracic range of motion was slightly diminished.   Lumbosacral exam revealed bilateral paraspinal tightness/tenderness with decreased range of motion.     The impressions were lumbar stenosis, leg pain and myofascitis/myositis.     He was given Zanaflex and Lortab (Exhibit 5F[9]).

On January 10, 2010, North Baldwin Infirmary personnel saw the claimant with a 4-day history of low back pain.   Exam revealed vertebral point tenderness.   X-rays of the lumbar spine, four views were normal.   The impression was low back pain, acute.   On February 6, 2010, the claimant had complaints of difficulty swallowing and congestion.   The diagnosis was pharyngitis.   On April 19, 2010, he had complaints of chronic back pain.   He related that he was out of pain medications and blood pressure medications.   The impressions were low back pain, acute; sciatica, acute and hypertension.   He was given Lortab and a medication for hypertension.   On February 11, 2011, the diagnoses were chronic back pain, hypertension, obesity and non-compliance.   The exam was essentially within normal limits (Exhibits 6F[10] and 7F[11]).

(R. 29-30).

In assigning weight to the opinions of Dr. Pita and Dr. Ndolo, the ALJ stated:

---

[9] (R. 310-324).

[10] (R. 325-356).

[11] (R. 357-359).

…[L]ess weight is given Dr. Pita [sic] opinions regarding the claimant's functional limitations. These forms were completed two months after the claimant quit a job in which he worked about 12 hour days for 7 days per week (although with some absenteeism). Dr. Pita's functional limitations are too restrictive and inconsistent with his office notes and the claimant's level of activity of his last work, especially in light of the claimant's testimony that he did not experience any further injury related to his back. Radiological results of the lumber spine indicated only mild discogenic degenerative change at L3-L5. Although there were some bulges, degenerative changes and congenital narrowing, there was no evidence of herniated nucleus pulposus or nerve encroachment.

Less weight is also given Dr. Ndolo's opinions that the claimant's pain disability was 9 on most categories. These opinions are not consistent with his office notes, which revealed little objective findings on examinations. Dr. Ndolo's opinions appear to be based mostly on the claimant's subjective complaints.

Dr. Ndolo's and Dr. Pita's opinions are also not consistent with findings from North Baldwin Infirmary. North Baldwin Infirmary examinations revealed very little objective findings. Moreover, these records showed the claimant was non-compliant with his medications. Drs. Ndolo and Pita's opinions are also not consistent with the findings from personal [sic] from Coastal Neurological Institute. The most significant findings were that he weighed 350 pounds. Examinations revealed normal strength testing, reflex exam and range of motion was only slightly diminished.

The claimant needs to lose weight to be a surgical candidate. Although the claimant's obesity compounds his back problems, it clearly did not prevent the claimant from performing strenuous work activity for long periods of time just prior to his being laid off from his last job. Furthermore, the Administrative Law Judge has factored any additional limitations stemming from obesity into the above residual functional capacity.

Clearly, the objective findings do not support the restrictive functional limitations elicited by Dr. Ndolo and Dr. Pita.

(R. 31-32).

"In *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir.2004),

[the Eleventh Circuit] concluded that the ALJ's decision to discredit a claimant's treating physicians was supported by substantial evidence because the medical opinions were (1) not supported either by the doctors' own treatment notes or medical tests, (2) based primarily on subjective complaints of pain, and (3) contradicted by the claimant's repeated refusal to take medicine prescribed by the doctors." *Fleming v. Comm'r, Soc. Sec. Admin.*, 550 F. App'x 738, 740 (11th Cir. Dec. 17, 2013) (per curiam) (unpublished).  Similarly, the ALJ's decision here stated that the treating physicians' opinions are not consistent with their treatment notes and other medical evidence of record, that the opinions are based primarily on Hale's subjective complaints of pain, and that the medical evidence indicates a history of non-compliance by Hale in taking his prescribed pain medication.

In claiming that the ALJ improperly weighed the treating physicians' opinions, Hale first argues that "the ALJ stating the opinions are not consistent with the objective examinations or radiological evidence is incorrect.  For example, numerous encounters reflect noted tenderness to palpitation, decreased flexion, and straight leg raise (Tr. 290, 316, 339, 368, 373, 397, 405, and 415).  Further, the ALJ fails to acknowledge a prior MRI of the lumbar spine that showed moderate stenosis of the L3, L4, and L5 discs of the lumbar spine consistent with the history of congenital spinal narrowing (Tr. 323)."  (Doc. 12 at 8).  The Commissioner's decision is due to be reversed, Hale argues, due to the ALJ's "failure to acknowledge the numerous examples of supporting objective evidence or, alternatively, clearly articulate the reasoning as described in Lewis why that evidence, including decreased range of motion, tenderness to palpitation, and moderate spinal stenosis was not consistent with Dr. Pita and Dr.

Ndolo's opinions." (Doc. 12 at 9).

However, in reaching her decision, the ALJ expressly considered all of these conditions, pointing to record evidence indicating "pain with palpation of the lumber spine" (R. 30), "[e]xaminations reveal[ing] normal strength testing, reflex exam and range of motion…only slightly diminished" (R. 32), and "mild discogenic degenerative change at L3-L5" with "some…congenital narrowing" (R. 31). While the ALJ clearly took these conditions into account, she found that the record evidence indicated them to be only "diminished" or "mild," and thus not supportive of the treating physicians' more severe opinions. Hale offers no specific argument why this reading of the record evidence is incorrect, and this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178. "Furthermore, contrary to [Hale]'s contention that the ALJ ignored evidence favorable to [Hale], 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). "The ALJ's decision in this case was not a broad rejection and was sufficient to enable…this Court to conclude the ALJ considered [Hale]'s medical condition as a whole." *Id.*

Hale also takes issue with the ALJ's assigning less weight to Dr. Ndolo's opinions regarding Hale's level of pain because she found they appeared to be based

mostly on Hale's subjective complaints.  The ALJ, however, acted appropriately in doing so.  *See* 20 C.F.R. §§ 404.1567(c)(3) & 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 n.3 (11th Cir. July 17, 2014) (per curiam) (unpublished) (" 'A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.' *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted). Thus, an ALJ may discount a treating physician's opinion where it 'appears to be based primarily on [the claimant's] subjective complaints of pain.' *Id.*"); *Costigan v. Comm'r, Soc. Sec. Admin.*, No. 14-11950, 2015 WL 795089, at *5 (11th Cir. Feb. 26, 2015) (per curiam) (unpublished) ("The ALJ articulated good cause for rejecting [treating physician ]Dr. Kemp's opinion that Costigan was disabled to the point that she could not work[ because, *inter alia*] his findings were based on Costigan's subjective reports and he had no objective medical records on which to base his opinion[, and] his opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques…Substantial evidence supports the ALJ's stated reasons, first, because the physician's opinion did not appear to be based on any objective medical evidence, such as medically acceptable clinical diagnostic techniques or laboratory findings, and, second, no such evidence was part of the record before the ALJ.

Instead, he provided only conclusory statements that certain activities would aggravate Costigan's chronic neck and low back pain or based his findings on Costigan's self-reports of symptoms." (citations omitted)).

Hale argues that the ALJ was under a duty to recontact Dr. Ndolo for clarification of his opinions. (*See* Doc. 12 at 8). Hale cites an unpublished Eleventh Circuit case from 2005, *Johnson v. Barnhart*, 138 F. App'x 266, in support of this proposition. In *Johnson*, the Eleventh Circuit noted:

> In making disability determinations, the Commissioner considers whether the evidence is consistent and sufficient to make a determination. If it is not consistent, the Commissioner weighs the evidence to reach her decision. If, after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians. 20 C.F.R. § 404.1527(c). In addition, under the Social Security Regulations,
>
> > [w]hen the evidence ... from your treating physician ... or other medical source is inadequate for us to determine whether you are disabled, we ... will first recontact your treating physician ... or other medical source to determine whether the additional information ... is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.
>
> 20 C.F.R. § 404[.]1512(e).

138 F. App'x at 270-71.

However, since *Johnson* was decided, the SSA's regulations regarding the duty to recontact physicians have been altered. "The SSA eliminated § 404.1512(e) effective March 26, 2012, thus 'modifying the requirement to recontact [a

claimant's] medical source(s),' ostensibly to give 'adjudicators more flexibility in determining how best to obtain this information.' *See generally How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651 (Feb. 23, 2012). 20 C.F.R. §[§ 404.1520b and] 416.920b explain[] the new protocol for recontacting medical sources." *Gray v. Astrue*, No. 2:10-CV-507, 2012 WL 1521259, at *3 n.1 (E.D. Pa. May 1, 2012). Hale's hearing before the ALJ was held after these new regulations took effect.

20 C.F.R. §§ 404.1520b(b) and 416.920b(b) both state: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." Thus, a mere determination that a medical opinion is inconsistent does not require an ALJ to recontact the source before discounting that evidence. An ALJ, among other courses of action, "**may** recontact [the claimant's] treating physician, psychologist, or other medical source" if "the evidence is consistent but [the ALJ] ha[s] insufficient evidence to determine whether [the claimant is] disabled, or if after weighing the evidence [the ALJ] determine[s he] cannot reach a conclusion about whether [the claimant is] disabled…" 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (emphasis added). *See also* Social Security Ruling (SSR) 96-5P (effective July 2, 1996) ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for

clarification of the reasons for the opinion."). Even then, the regulations give ALJs discretion in "determin[ing] the best way to resolve [an] inconsistency or insufficiency[,]…depend[ing] on the nature of the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). *See also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. Sept. 10, 2014) (per curiam) (unpublished) ("When evidence, including opinion evidence, is inconsistent, the ALJ has no duty to consider it. *See* 20 C.F.R. § 416.920b (providing that, if any record evidence is inconsistent, the ALJ will take the additional step of weighing the relevant evidence to determine disability)."); *Harris v. Colvin*, 584 F. App'x 526, 528 n.1 (9th Cir. Aug. 15, 2014) (per curiam) (unpublished) ("The agency was not required…to re-contact Dr. Lindstrom, since the evidence was sufficient to make a determination as to disability. 20 C.F.R. § 404.1520b(c); *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011) (noting that '[r]ejection of the treating physician's opinion ... does not by itself trigger a duty to contact the physician for more explanation.').[12]"); *Beasley v. Colvin*, 520 F. App'x 748, 752 (10th Cir. April 10, 2013) (unpublished) ("An ALJ need only recontact a treating source '[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled.' *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1520b(c). Although the ALJ noted that the handwritten notes were difficult to read, he further noted that 'Dr. Linden also completed a checklist, indicating multiple

---

[12] *McLeod* cited the old versions of 20 C.F.R. §§ 404.1512(e) and 416.912(e) in making this statement. *See* 640 F.3d at 885 n.6. Thus, even under the regulatory scheme prior to 20 C.F.R. §§ 404.1520b(b) and 416.920b(b) taking effect, an ALJ was not required to recontact a treating physician before rejecting his or her opinions.

mental limitations.'...The ALJ then discussed those findings. The ALJ had no duty to recontact Dr. Linden in this situation because the evidence was adequate to evaluate whether Ms. Beasley was disabled.");   Here, the ALJ's opinion thoroughly discussed the objective medical evidence of record (R. 29-31).   There is no indication that this evidence was "insufficient" to determine whether Hale was disabled, and the ALJ certainly did not feel that she was unable to reach a decision after weighing the evidence.

Hale has failed to demonstrate that the ALJ committed reversible error in assigning weight to the opinions of Hale's treating physicians.   The ALJ clearly articulated good cause for assigning less weight to those opinions, and substantial evidence supports those reasons.[13]   Accordingly, the undersigned **RECOMMENDS** that Claim 2 be rejected.

---

[13]      Hale twice cites *MacGregor v. Bowen*, 786 F.2d 1050, 1058 (11th Cir. 1986), for the proposition that, "where the Commissioner ignores or fails to properly refute the treating physician's opinion, it will be accepted as true as a matter of law."   (Doc. 12 at 7, 9 (also citing *Snyder v. Comm'r of Soc. Sec.*, 330 F. App'x 843, 847 (11th Cir. 2009) (per curiam) (unpublished) ("If an ALJ either 'ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.' *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986).")).   As the Commissioner points out (*see* Doc. 13 at 13 n.6), however, *MacGregor* appears not to be controlling precedent for this proposition.   *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (per curiam) (unpublished) ("There is language in *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir. 1986), for the proposition that, if an ALJ fails clearly to articulate reasons for discounting the opinion of a treating physician, that evidence must be accepted as true as a matter of law. However, our earlier decisions had remanded cases to the agency when there was a failure to provide an adequate credibility determination. *See, e.g., Owens*[ *v. Heckler*]*,* 748 F.2d [1511,] 1516[ (11th Cir. 1984) (per curiam)]; *Wiggins v. Schweiker,* 679 F.2d 1387, 1390 (11th Cir. 1982).   Pursuant to the prior precedent rule, we are bound by the holding of the first panel to address an issue of law, unless and until it is overruled by this Court sitting *en banc* or the Supreme Court. *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*).   Accordingly, rather than broadly accept the doctors' opinions as true, we will remand to the agency so that it can make a determination in the first instance of the proper weight to be afforded to those opinions."); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828,

## B.    Lack of Medical Opinion Evidence (Claim 1)

Hale argues that "the Commissioner's decision should be reversed because the ALJ's RFC is based only upon her own unqualified medical judgment and upon an uninformed, non-medical source opinion in clear violation of the established case law and the Commissioner's own procedures."  (Doc. 12 at 3).  The basis for this argument is that, having rejected the opinions of Hale's treating physicians, the ALJ was left only with opinions from two "single decision makers ('SDM')…, non-medical sources used to evaluate disability cases for the Social Security Administration."  (*Id.* at 4 (citing R. 67-82)).  "This fact alone[,]" Hale claims, "would warrant remand in this case given the ALJ cites no other opinion evidence to support her RFC."  (*Id.* at 5.  *See also id.* ("Clearly the ALJ's RFC lacks the support of substantial evidence without any type of medical opinion.")).  In support of this contention, Hale points to SSA policies "that SDM forms are not opinion evidence at the appeal levels[;]" thus, ALJs should "evaluate SDM RFC assessments as adjudicatory documents only, and not accord them any evidentiary weight when deciding cases at the hearing level."  (*Id.*).

As the Commissioner correctly points out (*see* Doc. 13 at 13), there is no indication in the ALJ's opinion that she assigned any special weight or significance to the SDM evidence, much less that she deemed them "medical opinions."  Hale argues, however, that the ALJ implicitly considered the opinion of one of the SDMs, an April 18, 2011 proposed physical RFC from SDM Susan Davis (R. 75-82), because the ALJ's RFC is "very similar" to that proposed by Davis "and there are no other opinions in the

---

833 n.1 (11th Cir. 2011) (per curiam) (same).

Nevertheless, as Hale has not shown the ALJ "failed to properly refute" the opinions of Hale's treating physicians, the Court need not decide the applicability of *MacGregor*.

file other than those of treating physicians that the ALJ errantly rejected." (Doc. 12 at 4).

The ALJ bears the ultimate responsibility for assessing a claimant's RFC at that level of administrative review. *See* 20 C.F.R. §§ 404.1527(d); 404.1546(c); 416.927(d) 416.946(c). Nothing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision – indeed, an ALJ may make a disability determination without any medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. May 2, 2007) (per curiam) (unpublished) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ. 20 C.F.R §§ 404.1513, 404.1527, 404.1545…Green argues that once the ALJ decided to discredit Dr. Bryant's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. Dr. Bryant's evaluation, however, was the only evidence that Green produced, other than her own testimony, that refuted the conclusion that she could perform light work. Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of the Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's

determination that Green could perform light work. The ALJ did not substitute his judgment for that of Dr. Bryant; rather, he determined that Dr. Bryant's opinion was inconsistent with objective medical evidence in the record.").

Hale claims that the ALJ had a "duty to develop the record by ordering a consultative exam[ that] was obviously neglected…" (Doc. 12 at 5). However, as with recontacting a treating physician, *see supra*, any duty of the ALJ to order a consultative examination arises only if "the evidence is consistent but [the ALJ] ha[s] insufficient evidence to determine whether [the claimant is] disabled, or if after weighing the evidence [the ALJ] determine[s he] cannot reach a conclusion about whether [the claimant is] disabled…" 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3) (emphasis added). *See also Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) ("[B]ecause of the Secretary's duty to develop the medical record fully and fairly, this court has held that it is reversible error for an ALJ not to order a consultative examination **when such an evaluation is necessary for him to make an informed decision.**" (quotation omitted) (emphasis added)). Again, the regulations give ALJs discretion in "determin[ing] the best way to resolve [an] inconsistency or insufficiency[,]…depend[ing] on the nature of the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(c), 416.920b(c).[14] While the ALJ and Davis's

---

[14] Hale quotes *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (per curiam), for the proposition that a "hearing officer 'may not arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional[]' " and that the "ALJ cannot act as both judge and physician." (Doc. 12 at 5 (citing "*Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)"). Hale fails to note, however, that these propositions are not found in the majority opinion but are instead from the specially concurring opinion of a single panel member. While certainly forceful and persuasive, the specially concurring opinion is not binding precedent, and Hale's failure to identify it as such could be

RFCs are similar, they are not identical,[15] and the similarities can be explained by the fact that both were examining the same evidence under the same regulatory framework. Additionally, the ALJ thoroughly discussed the objective medical evidence of record in reaching her decision. Again, there is no indication that this evidence was "insufficient" to determine whether Hale was disabled, and the ALJ obviously felt that she was able to reach a decision after weighing the evidence. Hale has failed to explain why the record evidence was so deficient as to trigger a duty to order a consultative examination.[16] Accordingly, the undersigned **RECOMMENDS** that Claim 1 be rejected.

---

deemed misleading (though the undersigned will assume mere negligence in this instance). *Cf. Langley v. Astrue*, 777 F. Supp. 2d 1250, 1257-58 (N.D. Ala. 2011) (finding that the plaintiff's attorney made an "obvious attempt to mislead the court" by characterizing a quotation from a former Fifth Circuit opinion as binding precedent, where the quotation was merely descriptive of another circuit's holding and, when put in context with the surrounding language in the opinion, did not support the proposition for which the plaintiff cited it); *Rohm & Haas Co. v. Utica Mut. Ins. Co.*, Civil Action No. 07-584, 2008 WL 2517176, at *2 n.4 (E.D. Pa. June 23, 2008) ("While both parties cited *Gallatin Fuels* in their briefs, neither party disclosed that the case is non-precedential. In fact, Rohm and Haas stated that '*Gallatin Fuels* controls this case.'…Under the circumstances, while the case is informative, to say that it is 'controlling' is at least an intemperate overstatement.").

[15] Both the ALJ and Davis found that Hale could lift and/or carry up to 20 lbs. occasionally and 10 lbs. frequently, that he could stand and/or walk for about 6 hours in an 8-hour workday, that he could occasionally crouch, and could never work at unprotected heights/climb ladders/rope/scaffolds. However, the ALJ found that Hale could "never kneel or crawl at all," while Davis found Hale could "occasionally" do both. Additionally, the ALJ found that Hale could sit for approximately 6 hours in an 8-hour workday with normal breaks, while Davis did not provide an assessment as to sitting.

[16] Moreover, the undersigned notes that the ALJ did not reject the opinions of Dr. Pita and Dr. Ndolo completely. She instead assigned them "less weight," indicating she considered them to some degree in making her determination. Thus, the record indicates that medical opinion evidence was considered by the ALJ.

## C.   RFC "Function-by-Function" Assessment (Claim 3)

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8P, 61 Fed. Reg. 34474 (July 2, 1996).[17]  " 'The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.' "  *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. Mar. 23, 2007) (per curiam) (unpublished) (quoting SSR 96-8P, 1996 WL 374184).

Hale argues that the ALJ's RFC determination did not comply with SSR 96-8p's "function-by-function assessment" requirements.  More specifically, he argues that "[t]he ALJ failed to discuss the various factors required by Social Security Ruling 96-8p and the Eleventh Circuit in regard to Mr. Hale's ability to perform work at a light level of exertion. The ALJ's decision contains no rationale as to why Mr. Hale could perform light work or perform sustained work activity, especially in light of the medically determinable impairments such as SI joint dysfunction, bulging discs of the spine, obesity, and sciatica (Tr. 28)."   (Doc. 12 at 10-11). Additionally, while "[t]he ALJ does name obesity a severe impairment and states vaguely that she 'has factored any additional limitations stemming from obesity

---

[17] " 'Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.' *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990) (internal quotations omitted). Although SSA rulings are not binding on this Court, we accord the rulings deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468–69 (11th Cir. 1994)." *De Olazabal v. Soc. Sec. Admin., Com'r*, 579 F. App'x 827, 832 (11th Cir. Sept. 4, 2014) (per curiam) (unpublished).

into the above residual functional capacity' (Tr. 32)[,]" Hale claims that "[t]his vague reference does not provide any specifics, and even appears to reveal the ALJ herself is not even sure how obesity affects the RFC, given her statement 'any additional limitations' which suggests some unknown factors are present (Tr. 32). Moreover, the ALJ made no attempt to even analyze Mr. Hale's ability to stand within the requirements of light work or utilize the relevant factors to SSR 96-8p in determining his standing capacity before expressing his RFC in terms of light exertion work." (*Id.* at 11-12).

The Eleventh Circuit has twice rejected similar arguments that an ALJ's supposed failure to follow SSR 96-8p's "function-by-function" assessment was reversible error. In *Freeman v. Barnhart*, 220 F. App'x 957, the court rejected the claimant's contention "that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis[,]" finding:

> While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday." SSR 83–10.

220 F. App'x at 959-60.

In *Castel v. Commissioner of Social Security*, 355 F. App'x 260 (11th Cir. Nov.

30, 2009) (per curiam) (unpublished), the claimant "argue[d] that the ALJ reached an RFC determination without going through a function-by-function analysis" – specifically, "that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands."   355 F. App'x at 263. Finding this argument to be "unfounded," the court stated:

> The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ("DDS") reports in arriving at Castel's RFC. *See* SSR 96–8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996) (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ ultimately decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work.
>
> An exam by Dr. Adam, a disability examiner, reflected Castel's ability to walk and work with her hands. Dr. Cusco, also a disability examiner, prepared a report that discussed Castel's work abilities, such as walking, lifting, grabbing, and manipulating. One DDS report found Castel capable of a full range of light exertion level work while another DDS report found her capable of medium exertion level work.
>
> Dr. Adam found that Castel did not have any back tenderness, that she had full grip strength with normal fine manipulation, and that she was able to walk without assistance. Dr. Cusco reported very similar findings, most importantly that Castel was able to walk without assistance. Further, Castel testified that she lived alone, cooked, did laundry, walked outside, and went to church. These findings are consistent with the ALJ's final determination that Castel is capable of performing the duties of a seamstress or employee of a laundromat.
>
> We do not require the ALJ to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a

proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions.

*Id.* (footnote omitted).[18]

Here, the record demonstrates that, in assigning Hale an RFC of "light work"[19] with certain limitations, the ALJ sufficiently "consider[ed] all of the evidence and found that it did not support the level of disability [Hale] claimed." *Freeman,* 220 F. App'x at 960. The ALJ made "careful consideration of the entire record," detailing in her opinion the objective medical evidence and medical opinions of record and comparing it with Hale's testimony. (*See* R. 28-32). The ALJ determined that the "objective findings" of record "do not support the restrictive functional limitations" suggested by the opinion evidence. (R. 32). The ALJ also considered the evidence in light of Hale's testimony "that he went back to work as a scaffold builder and forklift operator from August 2011 to January 2012." (R. 29).

---

[18] This Court and others in this Circuit have found *Castel* and/or *Freeman* to be instructive in addressing claims of error based on SSR 96-8p's "function-by-function" assessment requirement. *See, e.g., Howard v. Colvin,* Civil Action No. 2:13-00140-B, 2014 WL 3767595, at *8 (S.D. Ala. July 31, 2014) (Bivins, Mag. J.); *Foster v. Colvin,* Civil Action No. 12-0692, 2013 WL 4046469, at *12 (S.D. Ala. Aug. 9, 2013) (Cassady, Mag. J.); *Miller v. Colvin,* No. 2:12-CV-2869-LSC, 2013 WL 6407973, at *4-6 (N.D. Ala. Dec. 6, 2013) (Coogler, J.).

[19]

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) & 416.967(b). "In addition, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday." SSR 83–10, 1983 WL 31251 (Jan. 1, 1983).

As the ALJ noted, "[t]his work was strenuous, in that it required him to work 84 hours per week, 12 hours per day for 7 days a week[,]" and was inconsistent with Hale's other testimony that he "was unable to work due to his pain, which he described as unbearable[,]" and that he "has been disabled since June 15, 2010,… (R. 29).

Hale claims that "[l]imitations regarding Mr. Hale's inability to perform the standing and walking requirements of light work…are supported by the evidence of record, most specifically the course of treatment showing frequent complaints of back pain…Furthermore, Mr. Hale was noted to have tenderness to palpitation, reduced range of motion, and reduced straight leg raise testing, as well as undergoing Toradol injections for pain." (Doc. 12 at 11 (citing portions of the administrative record)). However, the ALJ acknowledged all of these various diagnoses in her opinion, including Hale's "back problems," but ultimately concluded that "it clearly did not prevent [Hale] from performing strenuous work activity for long periods of time just prior to his being laid off from his last job" and after he claimed to have become disabled. (R. 32). This Court is not free to reweigh the evidence or to substitute its own judgment for that of the ALJ, and substantial evidence supports the ALJ's RFC assignment of light work with certain limitations.

Hale's claim that the ALJ did not adequately account for his obesity in making her RFC is also without merit. In *Castel*, the claimant made a similar assertion of error, arguing "that the ALJ violated SSR 02–1p[, 67 Fed. Reg. 57859,

57862–63 (Sept. 12, 2002),] because (1) the ALJ failed to consider her left lower extremity pain and left plantar neuroma in combination with her obesity; and (2) even though the ALJ found her obesity to be a severe impairment, he did not specify any resulting functional limitations from such impairment."[20]  355 F. App'x at 264 (footnote omitted). The court rejected this argument, stating:

> The record reflects that the ALJ considered Castel's obesity.[7] Further, the ALJ made specific reference to SSR 02–1p in his ruling.[8] The ALJ determined that Castel's obesity was a severe impairment. However, the ALJ's decision reflects that Castel's obesity was ultimately determined not to result in any specific functional limitations.[9]
>
> > FN7 – The ALJ noted that Drs. Adam and Cusco found Castel to be more than two hundred pounds at a height of five foot one inch.
> >
> > FN8 – The ALJ stated in his order that, "I have taken the claimant's obesity into account in formulating this residual functional capacity in terms of her limitations and restrictions arising there from in accordance with Social Security Ruling 02–

---

[20]

The relevant portions [of SSR 02-1p ]state:

> "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment ... As explained in SSR 96–8p ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis....
> ....
> The combined effects of obesity with other impairments may be greater than might be expected without obesity....
> ....
> ... When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments we identify."

67 Fed. Reg. 57859, 57862–63 (Sept. 12, 2002).

*Castel*, 355 F. App'x at 264 n.6.

> 1p."
>
> FN9 – It is also worth noting that Castel weighed around two hundred pounds when she last worked in a laundromat in 2002. The ALJ did not explicitly state this in his decision but Castel's ability to perform her work duties at her current weight supports the ALJ's finding that obesity did not substantially affect her functional capacity.

*Id.* (record citations omitted).

As in *Castel*, here the ALJ expressly considered the medical evidence regarding Hale's obesity.[21]  While the ALJ here did not specifically reference SSR 02–1p, she did substantially track relevant language from that ruling in her opinion when taking Hale's obesity into account in her RFC assessment.  *Compare* (R. 32 ("[T]he Administrative Law Judge has factored any additional limitations stemming from obesity into the above residual functional capacity.") *with* SSR 02-1p ("When we identify obesity as a medically determinable impairment…, we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.").  Moreover, the ALJ expressly noted that, while Hale's "obesity compounds his back problems, it clearly did not prevent [Hale] from performing strenuous work activity for long periods of time" at his previous jobs as a scaffold

---

[21] (*E.g.*, R. 29-31 ("Weight loss was advised[ by Atmore Community Hospital personnel on May 13, 2010]…On exam[ by Coastal Neurological Institute personnel on November 19, 2010,] he weighted 350 pounds at 69.5 inches…The assessment was obesity and backache…On February 11, 2011, the diagnoses[ by North Baldwin Infirmary personnel] were chronic back pain, hypertension, obesity and non-compliance…On exam[ by Dr. Pita on January 31, 2012,] he stood 69 inches tall and weighed 371 pounds, which is described as morbidly obesity [sic]…The assessment was obesity and backache…On May 2, 2012,…[h]is BMI was 55.4…On exam, he weighed 375 pounds at a height of 69 inches…The assessments were backache, obesity, isolated blood pressure was elevated and esophageal reflux…)).

builder a forklift operator from August 2011 to January 2012 (R. 30-31).  As in *Castel*, Hale's "ability to perform h[is] work duties at h[is] current weight supports the ALJ's finding that obesity did not substantially affect h[is] functional capacity." *Castel*, 355 F. App'x at 264 n.9.

In sum, the undersigned **RECOMMENDS** that Claim 3 be rejected and that the Commissioner's final decision be **AFFIRMED**.

## V.      Conclusion

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that the Commissioner's final decision issued March 6, 2014, denying Hale's application for DIB and SSI benefits be **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3) and that final judgment under Federal Rule of Civil Procedure 58 be entered accordingly in favor of the Commissioner and against Hale.

## VI.     Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the

Magistrate Judge is not specific.

**DONE** this the 24th day of April 2015.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**